JONATHAN M. KAUFMAN, ESQ. (California State Bar No. 104576)
The Law Offices Of Jonathan M. Kaufman
220 Montgomery Street, Suite 976
San Francisco, CA 94104
Telephone: (415) 956-4765
Facsimile: (415) 956-1664
E-Mail: jonathan-kaufman@sbcglobal.net

Attorney for Plaintiffs

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| HARI SINGH SANDHU, et al.,<br><br>Plaintiff,<br><br>vs.<br><br>ROSEMARY MELVILLE,<br>District Director, United States Citizenship<br>and Immigration Services,<br><br>Defendant.<br>_____/ | Case No. C 07-5359 MMC<br><br>PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY INJUNCTION AND SUPPORTING MEMORANDUM OF POINTS AND AUTHORITIES |

## I. NOTICE OF MOTION AND MOTION FOR PRELIMINARY INJUNCTION

Notice is hereby given that on December 7, 2007 at 9:00 a.m. or as soon thereafter as the matter can be heard in the Courtroom of the Honorable Maxine M. Chesney, located at 450 Golden Gate Avenue, San Francisco, California, Courtroom 7, plaintiffs will move the Court for a preliminary injunction requiring defendant, the District Director the United States Citizenship and Immigration Services (USCIS), to adjudicate plaintiffs' visa petition and application for adjustment of status.

This motion will be based upon this motion, the following memorandum of points and authorities, as well as all other pleadings on file herein, and on such further discussion and argument as the Court may hear on the matter.

1

## II. FACTS

Plaintiffs Hari Singh Sandhu (Sandhu) and Sharanjit Kaur (Kaur) are husband and wife. Kaur is a citizen of the United States and Sandhu is a citizen of India.

On December 2, 2004 Kaur petitioned the USCIS to accord Sandhu immediate relative status, and Sandhu simultaneously applied for adjustment of status. *See*, Complaint, Exhibit A. On April 18, 2005 they were interviewed by a USCIS officer at the USCIS San Francisco District Office. *See*, Complaint, Exhibit B.

The USCIS has not adjudicated plaintiffs' petition and application. Plaintiffs have brought this action to compel the USCIS to adjudicate their immigration case.

## III. STATUTORY AUTHORITY

8 U.S.C. §1154(a)(1)(A)(i) vests defendant with the authority to accord immediate relative status under 8 U.S.C. §1151(b)(2)(A)(i) to the alien spouse of a United States citizen. To accord immediate relative status a United States citizen is required to file a petition on a Form I-130 with the USCIS in accordance with the provisions of 8 C.F.R. §204.1.

8 U.S.C. §§1255(a) vests defendant with discretion to adjust an alien's status to that of an alien lawfully admitted for permanent residence. To apply for adjustment of status an alien is required to file an application on Form I-485 in accordance with the provisions of 8 C.F.R. §245.2.

28 U.S.C. §1331 vests the Court with subject matter jurisdiction over plaintiffs' complaint.

28 U.S.C. §1361 provides that district courts have original jurisdiction of any action in the nature of mandamus to compel an agency to perform a duty owed to a plaintiff. 5 U.S.C.§706(1) vests the court with the authority to compel agency action unlawfully withheld or unreasonably delayed.

## IV. PLAINTIFFS HAVE EXHAUSTED THEIR ADMINISTRATIVE REMEDIES

There is no provision made for administrative review of the USCIS' alleged unlawful activity. Plaintiffs have exhausted their administrative remedies.

## VI. DEFENDANT HAS FAILED TO DISCHARGE HER DUTY

28 U.S.C. §1361 vests the Court with discretion to grant mandamus relief if (1) plaintiffs' claim is clear and certain; (2) the duty of the INS is ministerial and so plainly prescribed as to be free from doubt; and (3) no other adequate remedy is available. *Fallini v Hodel*, 783 1343, 1345 (9th Cir.1985).

Mandamus relief is appropriate in plaintiffs' case. Plaintiffs' claim is clear and certain and the USCIS' duty to adjudicate their petition and application so plainly prescribed as to be free from doubt.

Plaintiffs' petition and application were properly filed. Plaintiffs appeared for an interview as required and have responded to all evidence requests received from the USCIS.

While plaintiffs concede that no statute or regulation establishes an exact period of time in which the USCIS must act, time parameters do exist. 5 U.S.C. §555(b) dictates that the USCIS must proceed to conclude action on plaintiffs' petition and application within "a reasonable time". Congressional intent to compel agency action wrongfully withheld is manifested in the provisions of 5 U.S.C. §706(1) which vest the Court with authority to compel agency action unlawfully withheld or unreasonably delayed.

In plaintiffs' case "a reasonable time" can be ascertained from the USCIS' own records. The agency publishes its processing dates on its internet web site. According to USCIS records, the San Francisco USCIS office is now adjudicating applications for adjustment of status filed within six months of October15, 2007. Plaintiffs' case has been pending more twenty-eight months beyond the current processing date. See, attached Exhibit A.

The USCIS has had ample opportunity to conduct whatever investigation it deemed appropriate. The time for investigation has ended. It is respectfully submitted that the USCIS should now be enjoined to act. The USCIS should be enjoined to complete its adjudication of Kaur's visa petition and Sandhu's application for adjustment of status.

3

### VII. PLAINTIFFS WILL SUFFER IRREPARABLE INJURY IF THE USCIS IS NOT ENJOINED

In the Ninth Circuit the tests for determining the propriety of issuing a preliminary injunction are whether the moving party has demonstrated either a combination of probable success on the merits and the possibility of irreparable injury, or that serious questions are raised and the balance of hardships tips sharply in the moving party's favor. *Martin v Int'l Olympic Comm.*, 740 F.2d 670, 674-675 (9th Cir. 1984).

Plaintiffs' probability of success is substantial. There is no indication that plaintiffs are not eligible for the immigration benefits they seek. In the thirty-four months since their petition and application were filed the USCIS has not asserted that plaintiffs' petition and application were not filed in the manner prescribed by agency regulation, or that there is any statutory bar that precludes plaintiffs from receiving the immigration benefits they seek.

The probability that plaintiffs will sustain irreparable injury if the USCIS is not enjoined to act is substantial.

The uncertainty plaintiffs suffer in not knowing if they will be permitted to live together legally in the United States has already exacted an emotional toll and is substantial.

Because Sandhu is not lawfully admitted for permanent residence he must apply annually to obtain documentation to demonstrate he is entitled to work legally in the United States. The filing fee for an application for an employment authorization document is $340.00. 8 C.F.R. §103.7(b)(1).

Because Sandhu is not lawfully admitted for permanent residence he may not depart the United States without suffering adverse legal consequences. A departure without advance permission from the USICS would constitute an automatic withdrawal of his application. 8 C.F.R. §245.2(a)(4). To obtain permission to travel, plaintiffs must file an application for an advance parole. The decision to grant parole is discretionary, and the application requires the payment of a $305.00 filing fee. 8 C.F.R. §§212.5, 103.7(b)(1).

Moreover, Sandhu would lose important procedural and substantive rights if he were paroled into the United States. Sandhu was granted asylum in the United States on February 26, 2001. See,

4

attached Exhibit B. If Sandhu were to be paroled into the United States he would no longer be considered an alien who has been "admitted" to the United States. 8 U.S.C. §1101(a)(13)(B). He would be considered "an arriving alien". 8 C.F.R. §1.1(q). His constitutional rights would be significantly diminished. "[A]n alien seeking initial admission to the United States requests a privilege and has no constitutional rights regarding is application, for the power to admit or exclude aliens is a sovereign prerogative." *Landon v Plasencia*, 459 U.S. 21, 32 (1982).

Plaintiffs have been diligent in their efforts to obtain permanent residence. They have appeared as required by the USCIS and have been interviewed. They have submitted the evidence the USCIS has required. It has been thirty-eight months since their petition and application were filed, and two and one-half years since their interview. The USCIS has failed to adjudicate the case.

The balance of hardships unquestionably tips in plaintiffs' favor. The USCIS suffers no hardship in discharging its legal duty. In contrast, as described above, plaintiffs suffer multiple hardships because their case has not been adjudicated.

## VIII. CONCLUSION

Based upon the foregoing it is respectfully submitted that the motion for a preliminary injunction should be granted and the USCIS enjoined to adjudicate Kaur's visa petition and Sandhu's application for adjustment of status.

Dated: October 25, 2007

Respectfully submitted,

JONATHAN M. KAUFMAN
Attorney for Plaintiffs

5

# EXHIBIT A



Home   Contact Us   Site Map   FAQ

Search 

Advanced Search

Services & Benefits    Immigration Forms    Laws & Regulations    About USCIS    Education & Resources    Press Room

[ Print This Page ]   [ Back ]

# U.S. Citizenship and Immigration Services
## San Francisco CA Processing Dates
## Posted October 15, 2007

**Notice**: U.S. Citizenship and Immigration Services (USCIS) has improved the reporting procedure for processing times of immigration benefit applications. In the past, USCIS benefit processing reports indicated the specific type of applications or petitions that were being processed and the date the cases were received. However, the date the case was received did not provide a clear indication of when USCIS expected to complete the case, nor did it provide a clear indication of USCIS' commitment to process cases within a certain cycle time. It also did not align with the processing times and cycle times the agency reports in other contexts.

This improved reporting procedure is an effort to give our customers more accurate information that better reflects current processing time and USCIS service level commitments. Effective immediately, when we are completing applications and petitions within our service level goals we will report the USCIS service level commitment. For example, when our service level goal is to process a particular kind of case within six months, and if our processing time is six months or less, we will show "6 months".

When we are not meeting our service level goal, the date posted will reflect the filing date of cases that are being completed. It should be noted that while in some instances reported processing dates may appear to have regressed due to this change, they do not reflect a lengthening of USCIS processing times, but simply the change in reporting. Our goal is to provide accurate projections and thus give customers clear expectations as to what they can expect as a processing time.

**There are several important exceptions to the processing times shown below:**

- Case processing will be delayed if we must ask you for more evidence or information.
  If we ask for missing required initial evidence, count the processing time from when we receive that missing evidence.
- The case processing timeframe will start over if a customer doesn't appear for an interview or asks that it be rescheduled.

**What if I have a problem or have questions about a case?**

We offer a variety of services after you file. For example, for most kinds of cases you can check the status of your case online.

For more information about when and how to contact us, whether your case is outside our processing time or if there are other issues, please see our fact sheet –

Case Services - How do I... know what kind of services are available to me after I file my application or petition?

https://egov.uscis.gov/cris/jsps/officeProcesstimes.jsp?selectedOffice=69                    10/25/2007

One additional point about these projections. They are the time to complete processing and mail the actual notice and/or document. If you check case status online and see that your case has been approved, and you haven't yet received your approval notice or document in the mail, we ask that you wait thirty days from the approval date before contacting us. That is because it may take that long before it is returned to us as undeliverable. You can also print the case status online answer for your records.

District Office Processing Dates for **San Francisco CA** Posted October 15, 2007

| Form | Form Name | Processing Timeframe: |
|---|---|---|
| I-131 | Application for Travel Documents | 3 Months |
| I-485 | Application to Register Permanent Residence or Adjust Status | 6 Months |
| I-600 | Petition to Classify Orphan as an Immediate Relative | June 06, 2007 |
| I-600A | Application for Advance Processing of Orphan Petition | June 06, 2007 |
| I-765 | Application for Employment Authorization | 11 Weeks |
| N-400 | Application for Naturalization | 7 Months |
| N-600 | Application for Certification of Citizenship | June 24, 2007 |

[ Print This Page ]   [ Back ]

**10-25-2007 10:13 AM EDT**

Home   Contact Us   Privacy Policy   Website Policies   NoFEAR   Freedom Of Information Act   FirstGov

U.S. Department of Homeland Security

# EXHIBIT B

**U.S. Department of Justice**
Executive Office for Immigration Review

Falls Church, Virginia  22041

Decision of the Board of Immigration Appeals

=====================================================================

File:  A72 497 293 - San Francisco

Date:  FEB 26 2001

In re:  HARI SINGH SANDHU

IN EXCLUSION PROCEEDINGS

APPEAL

ON BEHALF OF APPLICANT:  Jonathan M. Kaufman, Esquire

ON BEHALF OF SERVICE:  Harold Spar
Assistant District Counsel

EXCLUDABLE:   Sec.   212(a)(6)(C)(i), I&N Act [8 U.S.C. § 1182(a)(6)(C)(i)] -
Fraud or willful misrepresentation of a material fact

Sec.   212(a)(7)(A)(i)(I), I&N Act [8 U.S.C. § 1182(a)(7)(A)(i)(I)] -
Immigrant - no valid immigrant visa or entry document

APPLICATION:   Asylum; withholding of exclusion and deportation; voluntary departure

In a decision dated April 23, 1996, the Immigration Judge denied the applicant's request for asylum and withholding of exclusion and deportation, but granted him the privilege of voluntary departure. The applicant has appealed from that decision. The applicant's appeal will be sustained.

The applicant stated that he is a 30-year-old native and citizen of India (Tr. at 7, 11-12, 18). The applicant's request for asylum is based on his fear of persecution by the Indian Police on account of his political opinion (Tr. at 7, 11-12, 18). He testified that he is a member of the Sikh faith and a supporter of the formation of a separate Sikh state to be known as Khalistan (Tr. at 20-21). The Immigration Judge found the applicant's testimony credible, but found that he had failed to establish a well-founded fear of returning to India (I.J. at 10, 11). On appeal, the applicant maintains that this conclusion is erroneous (Applicant's Brief at 12-16).

The applicant claimed that the police knew he supported the pro-Khalistan movement because the All Indian Sikh Student Federation (AISSF) met in his home in 1992; he talked about his ideas with family members and young men in his village; he gave money to the cause; and he hung posters in support of a separate state (Tr. at 22, 43, 44, 45). In addition, the applicant maintained, the police connected him to his family; his sister's brother-in-law and his sister's husband were active in the pro-Khalistan movement (Tr. at 22, 23, 26-27). The applicant testified that he was afraid of the police because the police killed his sister's brother-in-law in an "encounter" in 1990, only 2 months after he had been brutally beaten while in police custody (Tr. at 21, 29). The applicant said that 3 years before his sister's brother-in-law's death, the police harassed and repeatedly pressed false charges against the applicant's brother-in-law in retribution for his

A72 497 293

participation in the pro-Khalistan movement (Tr. at 29). According to the applicant, his sister and her husband went into hiding after the police killed the applicant's sister's brother-in-law and have not been seen since (Tr. at 24, 30, 53). The applicant claimed that on January 26, 1993, the police came to his house and told him that if he continued his demands for a separate state, he would be killed like his sister's brother-in-law (Tr. at 20-21, 29-30, 48). After that warning from the police, the applicant testified that he knew that to stay alive, he had to leave India, which he did within 3 days (Tr. at 31, 59-50).

We find that the resolution of whether the applicant has established a well-founded fear of returning to India is controlled by precedence of the United States Court of Appeals for the Ninth Circuit, the circuit in which this case arises. *See Singh v. Ilchert*, 69 F.3d 375 (9th Cir. 1995); *Singh v. Ilchert*, 63 F.3d 1501 (9th Cir. 1995); *Singh v. Moschorak*, 53 F.3d 1031 (9th Cir. 1995). Under Ninth Circuit precedence, an asylum applicant who provides credible testimony may establish a well-founded fear of returning to his or her native country or country of last residence on the strength of his or her own testimony alone. *See Cordon-Garcia v. INS*, 204 F.3d 985, 992 (9th Cir. 2000); *Campos-Sanchez v. INS*, 164 F.3d 448, 451 (9th Cir. 1998). The applicant in the instant case provided credible testimony that he had substantial reasons to fear the Indian police -- the disappearance of family members because they feared being killed by the Indian police, and the harassment and killing of another family member by the Indian police. The applicant was engaging in the same kind of activity as his relatives, supporting the pro-Khalistan movement, when the police threatened him. Given his personal connection to people who had already suffered at the hands of the police, the applicant's reasonable reaction was to consider the police's threat one that they could carry out. He acted prudently by immediately escaping the reach of his would-be persecutors. *See Aguilera-Cota v. INS*, 914 F.2d 1375, 1381 (9th Cir. 1990) (a single threat, coupled with general country information, may be sufficient to establish that an individual has a well-founded fear of persecution). Even though the applicant provided testimony establishing that no matter where he went in India, the police would be able to find him, where governmental authorities are involved in the persecution or harm, the applicant does not have the burden of showing that the applicant's past experience reflected conditions nationwide or that he could relocate. *See Singh v. Moschorak, supra*, at 1034.

Our review of the record reveals that on balance, the applicant warrants asylum in the exercise of discretion. The record does not reveal that since the applicant left India, conditions in India have changed to such an extent that the applicant no longer has a well-founded fear of being persecuted if he were to return to India. Accordingly, the appeal will be sustained and the applicant will be granted asylum pursuant to section 208 of the Act. Because the applicant's asylum application will be granted, we need not address the issue of the applicant's eligibility for withholding of exclusion and deportation. *See Matter of D-V-*, 21 I&N Dec. 77 (BIA 1993). Accordingly, the following orders will be entered.

ORDER: The appeal is sustained.

2

A72 497 293

FURTHER ORDER: The applicant is granted asylum pursuant to section 208 of the Act.

_____
FOR THE BOARD

3